# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

JOHN BARLOW,

    **Plaintiff,**

                                   Civil Action 2:17-cv-756
                                   Judge James L. Graham
    v.                               Magistrate Judge Chelsey M. Vascura

COMMISSIONER OF SOCIAL SECURITY,

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, John Barlow ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits, period of disability benefits, and supplemental security income benefits. This matter is before the United States Magistrate Judge for a Report and *Recommendation* on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 13), Plaintiff's Reply (ECF No. 14), and the administrative record (ECF No. 9). For the reasons that follow, the undersigned **RECOMMENDS** that the Court **AFFIRM** the Commissioner of Social Security's non-disability finding and **OVERRULE** Plaintiff's Statement of Errors.

## I.    BACKGROUND

Plaintiff protectively filed his applications for period of disability benefits, disability insurance benefits, and supplemental security income benefits on April 30, 2014, and May 1, 2014. (R. at 235–42.) Plaintiff alleges that his disability began on June 30, 2013, due to a blindness, a tumor behind his right eye and alcoholism. (*Id.*; R. at 262) Plaintiff's

applications were denied initially and upon reconsideration.  (*Id.* at 142–48.)  After receiving Notices of Reconsideration on October 9, 2014, Plaintiff again appealed the denial of his claims by filing a timely request for a hearing before an administrative law judge.  (*Id.* at 153–66.)

A hearing was held before Administrative Law Judge Noceeba Southern ("ALJ") on May 20, 2016.  On June 17, 2016, the ALJ issued her decision denying Plaintiff's request for benefits.  (R. at 45–66.)  Plaintiff timely requested a review of the ALJ's decision by the Appeals Council on August 17, 2016.  (*Id.* at 230–34.)  The Appeals Council denied his request for review on June 27, 2017.  (*Id.* at 1–6.)  Plaintiff timely filed this action for judicial review on August 25, 2017.

In his Statement of Errors, Plaintiff raises three issues.  First, Plaintiff asserts that the ALJ erred in failing to properly consider the opinions relating to his visual impairments, including the opinions of consultative examiner Dr. Sarah Yoest, O.D. and also the opinions of the state-agency reviewing physicians, Drs. Teresa Cruz, M.D. and Gary Hinzman, M.D.  (Pl.'s Statement of Errors 5–8, ECF No. 10.)  Second, Plaintiff posits that the ALJ's residual functional capacity ("RFC") determination did not account for all of his functional limitations, namely, the limitations Drs. Yoest, Cruz, and Hinzman opined that relate to his visual impairments.  Specifically, Plaintiff's maintains that the RFC should have included a limitation for "no fine depth perception" and also defined "ordinary work hazards."  (*Id.* at 8–11.)  Finally, Plaintiff asserts that the ALJ's determination that he can perform his past work or other work lacks substantial evidence because the hypothetical question he posed to the vocational expert ("VE"), which mirrored the deficient RFC, failed to account for all of the limitations attributable to his visual impairments.  (*Id.* at 11–12.)

2

In her Memorandum in Opposition, the Commissioner points out that although Plaintiff raises three contentions of error, his arguments all focus upon the ALJ's failure to include sufficient limitations to address his visual impairment, specifically, the limitation for "no fine depth perception," as well as a definition of "ordinary work hazards." The Commissioner acknowledges that the ALJ's RFC determination and the hypothetical question posed to the VE both fail to include all of the limitations that the Commissioner appeared to find credible, but submits that her decision is nevertheless supported by substantial evidence because Plaintiff could perform his past work even with the at-issue limitations.

In his Reply, Plaintiff maintains that the Commissioner "failed to adequately address [his] argument that the ALJ's use of the term 'low depth acuity in both eyes' in the RFC to describe some of Plaintiff's visual limitations fails to adequately address Plaintiff's lack of depth perception" and also "appears to conflate limitations in the defined categories of near acuity, far acuity and depth perception as described in the [Selected Characteristics of Occupations]." (Pl.'s Reply 1, ECF No. 14.) In addition, Plaintiff emphasizes that it is unclear from the ALJ's use of the phrase "must avoid ordinary work hazards" in the RFC whether she was referring to the environmental conditions listed in the DOT/ Selected Characteristics of Occupations ("SCO") or to less significant hazards as described in Social Security Rulings 83-14 and 85-15. Plaintiff maintains that remand is required because application of the more expansive definition contained in the Rulings could impact the number of jobs remaining.

## II.  RELEVANT RECORD EVIDENCE

In June 2014, Plaintiff presented to Dr. Yoest for an optometric consultative examination. Following an examination, Dr. Yoest opined that as a result of a toxoplasmosis

3

infection Plaintiff suffered at age four, he had "no fine depth perception (stereopsis)." (R. at 338-39.) She noted that his left eye remained "healthy" and that he had "good vision" with that eye. (R. at 338.)

One month later, in June 2015, state agency reviewing physician Dr. Cruz reviewed the record and concluded that Plaintiff had "no fine depth perception," limited vision in his right eye, and that he retained the capacity to perform "a full range of job duties that [do] not require [him to] work around hazards such as heights and machinery." (R. at 96-103.) In October 2015, state agency reviewing physician Dr. Hinzman reviewed the record and agreed that Plaintiff had "[n]o fine depth perception" and limited acuity and field of vision in his right eye and concluded that Plaintiff must "[a]void all exposure" to "[h]azards (machinery, heights, etc.)," adding "[n]o unprotected heights and no commercial driving." (R. at 124-26.)

At the hearing, Plaintiff testified that he is unable to work because of his tremors. (R. at 71.) He explained that his tremors have gotten progressively worse. Consistently, Plaintiff's counsel acknowledged that both Plaintiff's tremors and blindness predated his alleged onset date, but that his tremors have become more severe. (R. at 78-79.) Plaintiff confirmed that his right-eye blindness occurred at age four. (R. at 79.)

The VE asked Plaintiff a number of questions in order to properly classify his past work. Based upon Plaintiff's testimony, the VE identified Plaintiff's past work a general clerk, *DOT* 209.562-010; and merchandise distributor, *DOT* 219.367-018, light exertional level but performed at the medium exertional level. The VE testified that a hypothetical individual with Plaintiff's vocational profile and the RFC the ALJ ultimately assessed could perform Plaintiff's past work, as well as other jobs that exist in significant numbers in the national

4

economy. Plaintiff's counsel was afforded the opportunity to cross-examine the VE, but declined to do so. (R. at 81-91.)

### III.  THE ALJ'S DECISION

The ALJ issued her decision on June 16, 2016, finding that Plaintiff had not been under a disability within the meaning of the Social Security Act since June 30, 2013, the alleged onset date, through his date last insured. (R. at 50.) At step two of the sequential evaluation process,[1] the ALJ concluded that Plaintiff had the following severe impairments: remote loss of vision in his right eye status post childhood toxoplasmosis, essential tremors of the hands, affective disorder, and alcohol use disorder in reported remission. (*Id.*) The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ explained that Plaintiff's vision did not meet the vision listings because his records "revealed good vision with best corrected vision in [his] better left eye of 20/15 and normal

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

fields in that better eye." (*Id.* at 51.) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that he cannot climb ladders, ropes, and scaffolds and *must avoid ordinary work hazards due to low visual acuity in his right eye and low depth acuity in both eyes*; capable of only occasional public interaction.

(R. at 53 (emphasis added).)

In arriving at this RFC, the ALJ acknowledged Plaintiff's testimony that he lost his right eye due to toxoplasmosis at age four and that he worked as a chef until his tremors worsened at which time he began working in payroll and merchandising, a job he alleged he could not continue because of his tremors. (R. at 53-54.) The ALJ offered the following discussion relating to her consideration of the opinion evidence relating to Plaintiff's visual impairments:

> The State agency medical consultants had found the claimant capable of work at all exertional levels with visual limitations and hazard limitations due to the claimant's no right eye vision with left eye best corrected at 20/15. The State agency psychological consultants assessed the claimant as having no severe mental impairment (Exhibits 1A, 2A, 5A, 6A). Some weight is given to these assessments. However, the evidence discussed below supports a finding that the claimant is more limited than they determined as a result of his physical and mental impairments.
>
> The claimant's vision records indicate no vision in his right eye secondary toxoplasmosis infection at age four with normal findings in the remaining left eye with best corrected vision at 20/15 and normal fields in that eye. With regard to how the claimant's visual impairment affects his ability to perform work-related activities such as driving, reading, working at heights, or other hazardous situations, the claimant's optometrist[2] wrote that the claimant's visual impairment

---

2 Although the ALJ refers to Dr. Yoest as Plaintiff's Optometrist, the record reflects and the parties agree that she is a consultative examiner. (*See* Pl.'s Statement of Errors 6, ECF No. 10; Def. Mem. in Opp. 5, ECF No. 13.)

6

causes no fine depth perception (Exhibit 2F). Significant weight is given to the opinion, which is supported by the doctor's treatment records and testing. The undersigned has adopted this restriction but also precluded climbing of ladders, ropes, and scaffolds and work around hazards due to the claimant's visual impairment and essential tremors in the hands. These vision restrictions are supported by the doctor's findings at the vision exam and testing.

(R. at 53–54 (footnote added)).

The ALJ also noted that Plaintiff engages in "extensive activities of daily living" and other activities, including performing household chores such as regularly cooking, caring for dogs, cleaning the house, dishes, repair work, taking garbage out, vacuuming, yardwork, and gardening; helping his girlfriend get ready for work; shopping independently, helping a neighbor paint; hunting and cleaning a dead bird; traveling with his fiancé; and attending horse races. (R. at 51, 56, 57, 58, 59.)

The ALJ concluded that Plaintiff could perform his past work as a general clerk and merchandise distributor, reasoning as follows:

> The vocational expert identified claimant's past work as: General clerk, *DOT* 209.562-010, SVP 3 semi-skilled, Light exertional level; merchandise distributor, *DOT* 219.367-018, SVP 3 semi-skilled, Light exertional level but performed at the Medium exertional level. The undersigned concludes that the identified past work is the claimant's past relevant work because each job lasted long enough for the claimant to learn how to do it, and the claimant earned wages from each job at the substantial gainful activity level. The vocational expert explored the claimant's past work with additional questions at the hearing.
>
> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed. This is supported by the testimony of the vocational expert who concluded that claimant could perform the identified past relevant work as actually and generally performed. Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the *Dictionary of Occupational*

*Titles.* (DOT).

(R. at 60.)

Relying on the VE's testimony, the ALJ alternatively found that Plaintiff could perform other jobs that exist in significant numbers in the economy. (R. at 60–61.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.*)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)), *cert. denied sub. nom. Paper, Allied-Indus., Chem.& Energy Workers Int'l Union v. TNS, Inc.* 537 U.S. 1106 (2003). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite

8

conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## V. ANALYSIS

As a threshold matter, the Commissioner correctly points out (and Plaintiff does not dispute in his Reply) that Plaintiff's contentions of error boil down to two challenges to the ALJ's RFC formulation. Although for his first contention of error Plaintiff states that the ALJ failed to properly consider the opinion evidence regarding his visual impairments, (Pl.'s Statement of Errors 5, ECF No. 10), Plaintiff proceeds to point out that the ALJ considered the at-issue opinions and adopted Dr. Yoest's opinion that he has "no fine depth perception," (*Id.* at 6). Plaintiff's real issue, however, is that the ALJ's use of the phrase "low visual acuity in his right eye and low depth acuity in both eyes," (R. at 53) "does not address [his] lack of depth perception" and instead "conflate[s] limitations in the defined categories of near acuity, far acuity and depth perception as

9

described in the SCO." [3] Plaintiff also takes issue with the ALJ's inclusion of the limitation that he "must avoid ordinary work hazards" due to his visual impairments, arguing that this phrase is ambiguous without further definition. Plaintiff concludes that the ALJ's step four and five findings lack substantial evidence because the ALJ's hypothetical question (which mirrored the RFC determination) failed to sufficiently account for his visual impairment limitations.

The Commissioner acknowledges the ALJ's error in failing to limit Plaintiff to "no depth perception" in light of the ALJ's explicit adoption of that limitation from Dr. Yoest's opinion. The Commissioner further concedes that use of the phrase "must avoid ordinary work hazards" is different than Drs. Cruz and Hinzman's conclusion that due to his vision impairments, Plaintiff could not "work around hazards such as heights and machinery," (R. at 96-103), and must "[a]void all exposure" to "[h]azards (machinery, heights, etc.)" and "[n]o unprotected heights and no commercial driving," (R. at 124-26). The Commissioner maintains that these errors are harmless, however, because substantial evidence remains in support of the ALJ's determination that Plaintiff

---

3  Plaintiff explains in his brief as follows:

> "Near Acuity" is defined in the SCO as "[c]larity of vision at 20 inches or less." (SCO, Appendix C-4) "Far Acuity" is defined as "[c]larity of vision at 20 feet or more." (*Id*.) Lastly, "Depth Perception" is defined as "[t]hree-dimensional vision. Ability to judge distances and spatial relationships so as to see objects where and as they actually are." (*Id*.) On its face, the ALJ's use of "low depth acuity" would indicate that Plaintiff has low clarity in his depth of vision. Thus the ALJ's use of this term only suggests that there is a clarity issue with depth vision, not necessarily that there is a problem with depth perception as that term is defined in the SCO. Thus the ALJ's terminology of "low depth acuity" fails to properly address the full extent of Plaintiff's visual limitations as it relates to depth perception and a remand is required on this basis.

(Pl.'s Statement of Errors 9, ECF No. 10.)

can perform his past work.   The undersigned agrees.

The "claimant bears the burden of proving . . . the fact that [he or] she is precluded from performing [his or] her past relevant work . . . ."   *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (same).   To satisfy this burden, a claimant must show that he or she cannot perform his or her past relevant work as "actually performed" and as "generally required by employers throughout the national economy."   *See* SSR 82–61, 1982 WL 31387, at *2 (1982); *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 548 (6th Cir. 2002) ("[The claimant] must prove that she was unable to perform her past relevant work *and* that she is unable to return to her former type of work as generally performed." (emphasis added) (citations omitted)).   The regulations define "past relevant work" as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it."   20 C.F.R. § 404.1560(b)(1).   The regulations also offer the following guidance regarding the determination of whether a claimant is able to perform his or her past relevant work:

> Determining whether you can do your past relevant work. We will ask you for information about work you have done in the past. We may also ask other people who know about your work. (See § 404.1565(b).) We may use the services of vocational experts or vocational specialists, or other resources, such as the "Dictionary of Occupational Titles" and its companion volumes and supplements, published by the Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity. A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work. In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.

20 C.F.R. § 404.1560(b)(2).   Thus, although VE testimony may constitute substantial evidence

11

supporting the conclusion that a claimant can perform his or her past relevant work, an ALJ is not required to consult a VE. *Id.*; *see also Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010) (noting that in assessing whether the claimant was capable of performing her past relevant work, "the ALJ was not required to solicit testimony from a VE in reaching his conclusion" (citations omitted)).

In this case, Plaintiff does not contend that the VE improperly classified his past work as a general clerk, *DOT* 209.562-010, and merchandise distributor, *DOT* 219.367-018. Nor does Plaintiff dispute that per the DOT, *neither* of these positions requires depth perception. *See* DICOT 219.367-017 Merchandise Distributor, 1991 WL 671969; DICOT 209.562-010, Clerk, General, 1991 WL 671792. Thus, the ALJ's failure to include the limitation of "no depth perception" is harmless. *See Kavanaugh v. Comm'r of Soc. Sec.*, No. 15-cv-2846, 2016 WL 4721210, at * 32–33 (S.D. Ohio Sept. 9, 2016) (concluding that the ALJ's error was harmless because even if the limitations were included in the hypothetical question, the VE's answer would have still been the same).

Further, although the DOT does not contain a category for "hazards," it addresses environmental conditions, which include, among others, vibration, moving mechanical parts, electric shock, high exposed places, radiation, and explosives. Neither of Plaintiff's past jobs require such exposure. *See* DICOT 219.367-017 Merchandise Distributor, 1991 WL 671969 (for each condition, stating "Not Present – Activity or condition does not exist"); DICOT 209.562-010, Clerk, General, 1991 WL 671792 (same).

Regardless, even assuming that the ALJ meant "work hazards" to be broader than reflected in the opinions of Drs. Cruz and Hinzman, reversal is not warranted for two reasons.

12

First, Plaintiff's counsel had the opportunity to cross-examine to clarify any ambiguities and bring out any conflicts with the DOT, but failed to do so. *See*, *e.g.*, *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168 (6th Cir. 2009) (citations omitted); *Louden v. Comm'r of Soc. Sec.*, 507 F. App'x 497, 499 (6th Cir. 2012); *Baus v. Comm'r of Soc. Sec.*, No. 3:16-cv-740, 2017 WL 1190959, at *10 n. 9 (N.D. Ohio Mar. 30, 2017); *Cody v. Colvin*, No. 2:13-cv-176, 2014 WL 4230777, at *7 (E.D. Ky. Aug. 25, 2014); *Robinette v. Astrue*, No. 2:12-cv-145, 2012 WL 5988792, at *6 (E.D. Ky. Nov. 29, 2012).

Second, and most significantly, Plaintiff fails to explain how the limitations attributable to his vision impairments preclude him from performing his past jobs. As noted above, it is *Plaintiff's* burden to show that he cannot perform his past relevant work. *Jones*, 336 F.3d at 474. Plaintiff takes issue with the RFC determination and hypothetical question the ALJ posed to the VE because he maintains that both fail to sufficiently account for the limitations attributable to his visual impairments. But the record makes clear, and Plaintiff does not dispute, that (1) he has had these visual impairments (and the limitations attributable to the impairments) since the age of four as a result of a toxoplasmosis infection and (2) he performed all of his past employment notwithstanding these limitations. (*See*, *e.g.*, R. at 71-79, 99, 125, 338-39.) Plaintiff has not alleged and the record does not contain evidence reflecting that his visual impairments have worsened since he performed his past relevant work or even since he went blind in his right eye at age four. Consistently, both Plaintiff and his counsel indicated that it was Plaintiff's worsening tremors, not the blindness he suffered at age four, that informed the alleged disability onset date. (R. at 70-71, 78-79.) Thus, because the record makes clear that Plaintiff could perform his past jobs with his vision impairments, any failure by the ALJ to sufficiently articulate the limitations

attributable to Plaintiff's visual impairments in either the RFC or the hypothetical question to the VE is harmless. *See Riley v. Comm'r of Soc. Sec.*, No. 3:11-cv-194, 2012 WL 553123, at *8 (S.D. Ohio Feb. 21, 2012) (ALJ's failure to include certain RFC limitations is harmless error where the claimant could still perform her past relevant work despite these limitations).

Finally, the undersigned notes that although the ALJ indicated that her conclusion that Plaintiff retained the capacity to perform his past relevant work was "supported by the testimony of the vocational expert," her decision also makes clear that she also considered other record evidence, including Plaintiff's testimony, the opinion evidence, and the evidence of Plaintiff's activities of daily living and other activities, in making this determination. (*See* R. at 48-62.); *see also* 20 C.F.R. § 404.1560(b)(2) (ALJ not required to consult VE in determining whether a claimant can perform his or her past relevant work); *Wright-Hines*, 597 F.3d at 395 (same). For example, as discussed above, throughout her decision, the ALJ detailed Plaintiff's activities of daily living and other activities, which she described as "extensive." (R. at 51, 56, 57, 58, 59.) She also discussed Plaintiff's testimony that he lost his right eye vision at age four due to toxoplasmosis, that his shaking began at age nine and has progressed with time, and that he stopped being a chef when his tremors got too bad. (R. at 53.) In contrast, although Plaintiff challenges the ALJ's consideration of his visual impairments, he fails to explain how his visual impairments prevent him from performing his past work.

In summary, the undersigned concludes that even if the ALJ erred in failing to accurately capture all of Plaintiff's visual limitations or unambiguously define those limitations, and even if Plaintiff's counsel's failure to cross-examine the VE did not constitute a waiver, any such error was harmless because Plaintiff has failed to satisfy his burden to show that he cannot perform his

past relevant work. *See Riley*, 2012 WL 553123, at *8; *Kavanaugh*, 2016 WL 4721210, at * 32–33; *see also Kobetic v. Comm'r*, 114 F. App'x 171, 173 (6th Cir. 2004) ("When remand would be an idle and useless formality, courts are not required to convert judicial review of agency action into a ping-pong game." (internal quotation marks and citation omitted)).

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff's contentions of error be **OVERRULED**.

## VI. DISPOSITION

In sum, from a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiffs' Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VII. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and

Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE